**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**NORBERTO DE RIVAS,**

       **Petitioner,**

**v.**                                               **Civil Action No. 2:18cv35
(Judge Bailey)**

**WARDEN ENTZEL,**

       **Respondent.**

## REPORT AND RECOMMENDATION

On March 30, 2017, the *pro se* petitioner initiated this case by filing an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner alleges that the Bureau of Prisons improperly denied him consideration for placement in a Residential Reentry Center ("RRC"). On April 30, 2017, he paid the required $5 filing fee. On April 30, 2018, the respondent was directed to show cause why the petition should not be granted. On June 1, 2018, the respondent filed a Motion to Dismiss. Because the motion was accompanied by declarations and exhibits, the motion was construed as a motion for summary judgment, and a Roseboro Notice was issued on June 8 2018. On June 22, 2018, the petitioner filed a response. Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2, the undersigned now issues his Report and Recommendation.

## I.   FACTUAL BACKGROUND

The petitioner was convicted of the offense of "Possession of 15 or More Unauthorized Access Devices" in the United States District Court for the Western District of New York. On March 24, 2015, he was sentenced to imprisonment for a term

of 72 months, to be followed by 3 years of supervised release. ECF 19-2 at 6. The petitioner entered the custody of the BOP on April 6, 2015, and arrived at FCI Hazelton on December 18, 2017. Id. at 8. His current projected release date is December 13, 2018, via good conduct time. Id. at 7.

In February of 2018, the Bureau of Prisons ("BOP") considered the petitioner for possible placement in a RRC. However, he was determined ineligible because of multiple pending unresolved criminal charges and warrants including an open arrest warrant in his release destination of Western New York.

## II. THE PLEADINGS

### A. The Petition

The petitioner alleges that the BOP has failed to follow its own Policy Statement 7310.04, and therefore, has improperly denied him consideration for RRC placement. In particular, he notes that PS Statement 7310.04 § 10(f) states that inmates in the following categories shall not ordinarily participate in CCR programs: (f) inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction or confinement. Therefore, the petitioner argues that the wording of the policy is restricted to pending charges that will likely lead to an arrest, conviction or confinement. The petitioner alleges that the charges in Niagra Falls, New York have been dismissed. He further argues that although there is a current charge pending in Orange County California with an active warrant, the warrant is not extraditable. In addition, he argues that although there is an open matter against him in Oregon, the warrant is only extraditable in Washington, California and Nevada. Because he is forced to return to the Western District of New York where he was arrested and prosecuted, and is unable to

transfer his probation from New York to Colorado, the petitioner maintains that there is no probability that the pending charges or detainers in California and Oregon will likely lead to an arrest, conviction or confinement. The petitioner also argues that the BOP's failure to apply the policy as it is written, is a violation of the Accardi Doctrine, and in order to ensure the validity of that Doctrine, this Court should find the violation warrants relief.

The petitioner acknowledges that he had not exhausted his administrative remedies, but asks this Court to excuse the same because the requirement is not statutorily imposed, but rather, is judicially imposed. He argues as such, it is within the court's discretion to waive exhaustion in certain circumstances. The petitioner then argues that he will suffer irreparable harm, because he will lose the ability to receive his re-entry period. In addition, the petitioner argues that exhaustion may be considered futile given the BOP's position appears to be set in stone.

For relief, the petitioner requests an order from the court instructing the BOP to process his referral for RRC placement without delay.

**B. Motion to Dismiss construed as Motion for Summary Judgment**

In support of his motion, the respondent argues that:

1. The petitioner concedes, and BOP records confirm, that he did not exhaust his administrative remedies regarding his RRC placement and no excuse exists for his failure to exhaust; and

2. His claim is moot because the Bureau properly considered him for RRC placement and determined him to be ineligible.

**C. The Petitioner's Reply**

3

In reply, the petitioner has provided an exhibit which includes the original sealed disposition of his charges in New York which indicate the charges were dismissed on February 26, 2015. CF No. 24-1. The petitioner contends that the disposition was provided to the BOP in March of 2015, but they failed to update their records. The petitioner also indicates that he advised BOP staff of the dismissal, but they disregarded the information. The petitioner again argues that PS 7310.01 § 10(f) states that inmates who have unresolved pending charges or detainers that will likely lead to arrest, conviction or confinement will not receive RRC placement. Accordingly, the petitioner argues that the program statement allows inmates, like himself, who have outstanding charges to receive RRC placement if placement will not lead to arrest, conviction or confinement. The petitioner contends that because he has one non-extraditable warrant and one warrant that is only extraditable from three states, his placement in an RRC in New York will not allow for his arrest, conviction or confinement.

### III. LEGAL STANDARD

**A.  Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.

Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

### IV. ANALYSIS

A.  Exhaustion of Administrative Remedies

Generally, a federal inmate must exhaust available administrative remedies before he files a habeas petition. See, e.g., Mcclung v. Shearin, 90 Fed.Appx. 444 (4th Cir. 2004); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996) (same);Greene v. Warden FCI Edgefield, 2017 WL 1458997 (D.SC 2017) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). In requiring exhaustion, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to

5

avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'"Alexander v. Hawk, 159 F.2d 1321, 1327-28) (11th Cir. 1998) (internal citation omitted)..

However, because the statute authorizing habeas lawsuits does not expressly require administrative exhaustion, Reeder v. Phillips, 2008 WL 2434003 at *2 (N.D. W.Va. June 12, 2008), this Court retains discretion to disregard the exhaustion requirement in "pressing circumstances." Id. at *3. However, exhaustion should only be excused where administrative review would be futile. Jaworski v. Gutierrez, 509 F. Supp. 2d 573 (N.D.W.Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rule adversely. Reeder, 2008 WL 2434003 at *3.

In this case, the petitioner acknowledges that he has not exhausted his administrative remedies.  However, exhaustion of administrative remedies would clearly be appropriate in this instance given that the petitioner alleges that the sole reason he is being denied RRC placement is because of the BOP's position with respect to the "outstanding" warrant issued in New York, the state to which the petitioner will be released on supervision upon expiration of his term of incarceration.  Although it would appear from the exhibit filed by the petitioner with his response that the criminal charge

underlying that warrant was dismissed on February 26, 2015, BOP staff as of April 27, 2018, had not received any documentation that the charge had been reconciled. Had the petitioner provided this information to the BOP through the grievance process, the results of his RRC review might have been different, or at the very least, staff could have explained why dismissal of the New York charge did not change his status because of the other two charges still pending.

Furthermore, this undersigned finds unpersuasive the petitioner allegations that it would have taken him 6-9 months to complete the administrative process, "due to the unnecessary extensions requested by the [BOP] to drag the process out." ECF No. 24 at 3. The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).   See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[1]  An inmate is not deemed to have exhausted his administrative

---

[1] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997). Therefore, had the Petitioner begun the grievance process immediately, he could have had a response and still filed a § 2241 if he did not receive a final response that satisfied him.

While this Court has in the past excused a petitioner from exhausting his administrative grievances, it has only done so where the record before it established no unresolved issues. However, the record now before this Court raises questions which would require a supplemental response from the respondent before a reliable recommendation could be issued on the petition. Questions such as whether the petitioner's New York criminal charges have, indeed been dismissed, and whether he would be eligible for RRC placement despite the outstanding cases in California and Oregon. By requiring the petitioner to attempt resolution of these issues within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

Finally, there is no suggestion that the BOP would have been certain to rule adversely, and if the petitioner had presented the claims he presents in this petition and in his reply, he could have been provided relief, or an explanation which might have satisfied him that no relief would be available from this Court. Accordingly, the

undersigned believes it would be inappropriate to excuse exhaustion in this case. Moreover, even if the Court wishes to consider his petition, at best it can only recommend that the petitioner be reconsidered for RRC placement and cannot require that he receive RRC placement.

A. RRC Placement

The Due Process Clause of the Fifth Amendment states that [n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. To determine whether the BOP is depriving the petitioner of due process, the Court must determine first whether he has a protected liberty interest in being transferred to an RRC for a specific period of time. Protected liberty interests are created by "the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion." Kentucky v. Dep't of Corr. V. Thompson, 490 U.S. 454, 463 (1989) (quoting Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." id. At 460, and "[t]he entitlement to a benefit must be grounded in some statute, rule, or policy." Hughlett v. Romer-Sensky, 497 F.3d 557, 567 (6th Cir. 2006).

18 U.S.C. § 3624(c)(1)(effective April 9, 2008), as amended by the Second Chance Act of 2007, governs RRC Placements. The statute provides, in pertinent part that:

> [t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The BOP must issue regulations ... which shall ensure that placement in a community correctional facility by the Bureau of Prisons is –

>    (A) conducted in a manner inconsistent with section 3621(b) of this title;
>
>    (B) determined on an individual basis; and
>
>    (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(6). The statutory factors the BOP must consider in making RRC placement decisions are found in 18 U.S.C. § 3621(b).[2]

> The related regulations state that:
>
>> [i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

28 C.F.R. § 570.21(a); and

>> [i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the

---

[2] 18 U.S.C. § 3621(b) provides:
   (B) Place of imprisonment.– The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence –
(A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 ....

> greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

298 C.F.R. § 570.22

Viewed together, the statute and regulations require the BOP to consider placing and inmate in an RRC during a portion of the inmate's last months of a sentence. However, the statute and regulations fall short of requiring the BOP to actually place an inmate in an RRC. Courts consistently have held that § 3624(c) does not create a protected liberty interest, and thus does not guarantee placement into community confinement for any federal prisoner." Pollard v. Sherrod, No. 10-cv-143-DRH, 2010 WL 2184366, at *1 (S.D. Ill. Aug. 10, 2010) (unpublished). This conclusion is supported by Supreme Court decisions which hold that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979) or confined any particular correctional facility. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983). Similarly, no due process protections are required for "prisoner classification and eligibility for rehabilitative programs in the federal system." Moody v. Daggert, 429 U.S. 78, 88 n.9 (1976). "Congress has given federal prison officials full discretion to control the conditions of confinement," and prisoners have "no legitimate statutory or constitutional entitlement sufficient to invoke due process." Id. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976).

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that respondent's Motion to Dismiss, herein construed a Motion for Summary Judgment [ECF No. 19] be **GRANTED**, and the petitioner's § 2241 petition be **DISMISSED** for the failure to exhaust administrative remedies, and/or for failure to state a claim upon which relief can be granted.. It is further **RECOMMENDED** that the Petitioner's Motion for Return of Personal Property [ECF No. 25][3] be **DENIED WITHOUT PREJUDICE** to his right to file a Bivens action and his Motion to Expedite [ECF No. 26] be **DENIED AS MOOT**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and provide a copy to counsel of record via electronic

---

[3] On July 30, 2018, the petitioner filed a motion indicating that he has been placed in the SHU in protective custody. The petitioner maintains that various items of personnel property have been taken from him including his immigration file that he maintains proves that he is a U.S. citizen as well as files regarding his pending and closed cases. To the extent that staff at FCI Hazelton has "confiscated" personnel items belonging to the petitioner, a habeas petition is not the proper recourse for seeking its return.

means. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

    DATED: September 17, 2018.

                                              */s/ James P. Mazzone*
                                              JAMES P. MAZZONE
                                              UNITED STATES MAGISTRATE JUDGE